# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SARA GHADAMI, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  Civil Action No. 19-00397 (ABJ) |
| | ) |
| UNITED STATES | ) |
| DEPARTMENT OF | ) |
| HOMELAND SECURITY, *et al.* | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Sara Ghadami, an American citizen, initiated lawful processes to bring her parents to the United States in 2016. Plaintiff's mother now lives in this country with her three children, but her father is still waiting for an answer. On February 15, 2019, Sara and her father Ali Akbar Ghadamy filed a complaint in this Court against the United States Department of Homeland Security ("DHS"); the Citizenship and Immigration Services ("USCIS"); the Department of State; the U.S. Embassy in Ankara, Turkey; Kirstjen Nielsen, Former Secretary of DHS; L. Francis Cissna, Director of USCIS; William P. Barr, Attorney General of the United States; Michael Pompeo, the Secretary of State; and Jeffrey Hovenier, Charge de Affaires at the U.S. Embassy in Ankara, Turkey. Compl. [Dkt. # 1]. Plaintiffs allege that defendants violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, and the Constitution's due process clause when they unreasonably delayed rendering a decision on whether Ali Akbar Ghadamy is entitled to a waiver of the restrictions on immigration set forth in Presidential Proclamation 9645. Compl. ¶¶ 12, 22–40.

On June 7, 2019, defendants moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Defs.' Mot. to Dismiss [Dkt. # 11] ("Defs.' Mot.") at 2. Defendants also argued that plaintiffs failed to state a claim upon which relief can be granted under Rule 12(b)(6). *Id.* at 14–17. Plaintiffs opposed the motion on July 5, 2019. Pls.' Opp. to Defs.' Mot. to Dismiss [Dkt. # 15] ("Pls.' Opp."). The Court finds that it has jurisdiction to review plaintiffs' claims but that they have failed to state a claim for relief. Thus, it will grant defendants' motion to dismiss.

## BACKGROUND

### I. Legal Background

The Immigration and Nationality Act ("INA") provides that a U.S. citizen who wishes to bring a foreign national relative to the United States must file a Petition for Alien Relative (Form I-130) with the United States Customs and Immigration Service ("USCIS"). 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1). After the petition is approved, it is forwarded to the Department of State's Processing Center. 8 C.F.R. § 204.2(a)(3). The foreign national is notified to go to the local U.S. consulate in his country to complete visa processing, which includes submitting an online Immigrant Visa and Alien Registration Application (Form DS-260) and appearing for an interview with a consular officer at the embassy. 22 C.F.R. § 42.67(a)(3).

At the conclusion of the interview, "the consular officer must [either] issue [or] refuse the visa . . . ." 22 C.F.R. § 42.81(a). "If the consular officer refuses the visa, he or she must inform the applicant of the provisions of law on which the refusal is based, and of any statutory provision under which administrative relief is available." 9 Foreign Affairs Manual ("FAM") § 504.1-3(g). "If a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." 22 C.F.R. § 42.81(e). At all times, the alien bears

the burden of establishing that he "is not inadmissible" and "that he is entitled to the nonimmigrant, immigrant, special immigrant, immediate relative, or refugee status claimed." 8 U.S.C. § 1361.

On September 24, 2017, President Trump issued Presidential Proclamation 9645, entitled "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or Other Public-Safety Threats." 82 Fed. Reg. 45,161 (Sept. 24, 2017) ("Proclamation").[1] With some exceptions, the Proclamation sets forth that nationals of seven countries, including Iran, are banned from entering the United States. *Id.* at 45,163. The ban arose because "the Secretary of Homeland Security . . . determined that a small number of countries . . . remain deficient at this time with respect to their identity-management and information-sharing capabilities, protocols, and practices. In some cases, these countries also have a significant terrorist presence within their territory." *Id.* at 45,161. The constitutionality of the Proclamation was upheld in *Trump v. Hawaii*, 138 S. Ct. 2392, 2423 (2018), and the waiver process played an important role in the Court's decision. *Id.* at 2422–23.

The Proclamation provides: "[A] consular officer . . . may, in [his] discretion, grant waivers on a case-by-case basis to permit the entry of foreign nationals for whom entry is otherwise suspended or limited . . . ." Proclamation, 82 Fed. Reg. at 45,168. "A waiver may be granted only if a foreign national demonstrates to the consular officer's . . . satisfaction that:

---

[1] The INA grants broad authority to the President to control the admission of aliens:

> Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate.

8 U.S.C. § 1182(f).

(A) denying entry would cause the foreign national undue hardship; (B) entry would not pose a threat to the national security or public safety of the United States; and (C) entry would be in the national interest." *Id.*

## II. Factual and Procedural Background

Plaintiff Sara Ghadami ("Sara") is a U.S. citizen. Compl. ¶ 1. On May 17, 2016, she filed a Petition for Alien Relative (Form I-130) for her father, Ali Akbar Ghadamy, ("Ghadamy") an Iranian citizen. *Id.* ¶¶ 17, 18. The petition was approved on November 4, 2016, and it was forwarded to the Department of State for processing. *Id.* ¶ 19. Sara also filed a petition on behalf of her mother; her petition and visa application were approved, and her mother now lives in the United States. Pls.' Opp. at 2–3.

Sara's father then filed Form DS-260 in December of 2016, Compl. ¶ 20, and he had an interview with a consular officer on July 27, 2017. Declaration of Chloe Dybdahl, Ex. A to Defs.' Mot. to Dismiss [Dkt. # 11-2] ("Dybdahl Decl.") ¶ 4. His visa application was reportedly refused that day, *id.*, and his case was placed in "administrative processing." Compl. ¶ 25. On March 2, 2018, the consular officer again refused Ghadamy's visa application. Dybdahl Decl. ¶ 5. Following this refusal, the consular officer proposed a waiver of the Proclamation's entry restrictions and the case was again placed in "administrative processing" for further evaluation. Compl. ¶¶ 25, 33. As of today, Ghadamy is still undergoing consideration for a waiver. Dybdahl Decl. ¶ 6. According to the government, the consular office has made a preliminary determination that the personal hardship and national interest prongs of the waiver have been met, but it is still deciding whether the national security prong can be cleared. *Id.* ¶¶ 5–6.

Since his waiver has been under review, Ghadamy has been separated from his wife of forty-six years and his three children. *See* Pl.'s Opp. at 4. On February 15, 2019, plaintiffs filed

a complaint in this Court, claiming that the agency's delay in deciding Ghadamy's case is a violation of the APA and the Constitution's guarantee of due process under the Fifth Amendment. Compl. ¶¶ 22–40. They request relief in the form of a declaratory judgment that defendants have violated the law and a writ of mandamus compelling defendants to promptly complete administrative processing and to issue a visa to Ghadamy. *Id.* at 10.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

## I. Subject Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-

matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## II.    Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint "liberally in the plaintiff's favor," and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), citing *Schuler*, 617 F.2d at 608. Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

Defendants moved to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the Court does not have jurisdiction to hear plaintiffs' claims. Defs.' Mot. at 7–16. Defendants also argue that the complaint should be dismissed under Rule 12(b)(6) because plaintiffs fail to state a claim under the APA, the Mandamus Act, or the Fifth Amendment of the Constitution. *Id.* at 11, 16–18. The Court finds that it has jurisdiction over the case, but that plaintiffs have failed to state a claim for relief that is plausible on its face.

## I.  Jurisdiction

Defendants argue that the Court does not have jurisdiction for two reasons:  First, they maintain that the doctrine of consular nonreviewability precludes the Court from reviewing the consular officer's decision.  Second, defendants insist that the claims are moot because defendants have already issued a denial to Ghadamy's visa application.  For the reasons stated below, neither argument passes muster.

### A.  Consular Nonreviewability

Under the doctrine of consular nonreviewability, courts do not have jurisdiction to review visa denials because consular officers "have complete discretion over issuance and revocation of visas." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1158 n.2 (D.C. Cir. 1999); *see also Rohrbaugh v. Pompeo*, 394 F. Supp. 3d 128, 131 (D.D.C. 2019).  Courts routinely apply this doctrine to preclude lawsuits seeking review of visa denials in light of "the political nature of visa determinations and of the lack of any statute expressly authorizing judicial review of consular officers' actions." *Saavedra*, 197 F.3d at 1159–60 (collecting cases).

The government posits that because Ghadamy's application was refused under § 221(g) of the INA at the conclusion of his interview and again on March 2, 2018, the doctrine precludes plaintiffs from contesting that decision.[2]  Defs.' Mot. at 7–10.  But plaintiffs do not seek review of defendants' decision to refuse the visa application; instead, this lawsuit addresses the

---

2      Section 221(g) of the INA, codified at 8 U.S.C. § 1201(g), provides:

> No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law[.]

government's delay in deciding whether Ghadamy qualifies for a waiver. So, the question for the Court is whether there has been a final decision on that request that would trigger the doctrine. *See P.K. v. Tillerson*, 302 F. Supp. 3d 1, 11 (D.D.C. 2017) ("[T]he doctrine of consular non-reviewability does not apply where the government has not made a final visa decision.").

Other courts in this district have found that where the application is still undergoing administrative processing, even where a refusal has been relayed, the decision is not final. *See Nine Iraq Allies Under Serious Threat Because of Their Faithful Serv. To the United States v. Kerry*, 168 F. Supp. 3d 268, 290–92 (D.D.C. 2016) (finding that where plaintiffs have received refusals under § 221(g), but they were advised that their administrative process was not yet complete, the doctrine of consular nonreviewability did not bar their claims); *P.K.*, 302 F. Supp. 3d at 11 (where plaintiffs were told that they were not eligible for diversity visas, the court found that their claims were not barred by the doctrine because plaintiffs had been asked to submit supplemental documents). Finding those cases instructive, this Court has also previously concluded that claims alleging unreasonable delay while a case remains suspended in "administrative processing" are not barred by the doctrine of consular nonreviewability. *Vulupala v. Barr*, No. 19-CV-378, 2020 WL 601887 at *3–*6 (D.D.C. Feb. 7, 2020).

Here, Ghadamy's application remains in "administrative processing" because he is being considered for a waiver. *See* Compl. ¶¶ 25, 33; Dybdahl Decl. ¶ 6. In other words, the government's "refusal" was an interim decision, and there has been no final decision rendered as to Ghadamy's eligibility for the visa. *See Didban v. Pompeo*, No. 19-CV-881, 2020 WL 224517 at *4 (D.D.C. Jan. 15, 2020) (finding the doctrine of nonconsular reviewability did not apply to plaintiff's claim where he had been refused a visa pursuant to Presidential Proclamation 9645 but was being considered for a waiver); *Bhagerian v. Pompeo*, No. 19-CV-1049, 2020 WL 674778,

9

at *3 (D.D.C. Feb. 11, 2020) (same). Thus, the doctrine of consular nonreviewability does not bar the Court from considering whether the government has unreasonably delayed issuing a decision.

### B. Mootness

Defendant then argues that the case cannot be heard because it is moot. Defs.' Mot. at 15. "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013), quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). A case is moot "if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Am. Bar. Ass'n v. FTC*, 636 F.3d 641, 645 (D.C. Cir. 2011).

Defendants contend that plaintiffs' claims are moot because Ghadamy's visa application has already been denied, but as noted above, this complaint is based on defendant's failure to issue a decision on the pending request for a waiver. An order from this Court requiring defendants to process Ghadamy's waiver would affect the parties' rights, and thus, the case is not moot. *Didban*, 2020 WL 224517, at *4 (finding that the case was not moot where plaintiff's visa application had been refused, but she was still under consideration for a waiver of the Proclamation's restrictions) citing *Patel v. Reno*, 134 F.3d 929, 933 (9th Cir. 1997); *Thomas v. Pompeo*, No. 19-CV-1050, 2020 WL 601788, at *4 (D.D.C. Feb. 7, 2020) (same).

## II. APA Claim

Plaintiffs' first claim alleges that the government has unlawfully delayed rendering a decision on Ghadamy's waiver in violation of the APA, and thus the Court should compel the government to act. Compl. ¶¶ 23–36. Plaintiffs assert that Ghadamy's application has been delayed pursuant to a policy called the "Controlled Application Review and Resolution

Program" ("CARRP"), *id.* ¶ 28, in which the government allegedly "intentionally delays the applications of adherents of Islam due to security concerns." *Id.* ¶¶ 27–29. Plaintiffs contend that CARRP is in violation of the APA because it did not go through notice and comment requirements, and it leads to unreasonable delays in processing visa applications. *Id.* ¶¶ 30–33.

Defendant argues that CARRP does not apply to plaintiffs, because CARRP is a USCIS policy that does not extend to the Department of State or I-130 visa applications. Defs.' Mot. at 3. The policy states that it is a "USCIS policy for . . . processing cases with national security [] concerns" that applies to "all applications and petitions that convey an immigrant or non-immigrant status. This policy does not apply to petitions that do not convey immigrant or non-immigrant status." Policy for Vetting and Adjudicating Cases with National Security Concerns, United States Citizenship and Immigration Services, https://www.uscis.gov/sites/default/files/USCIS/About%20Us/Electronic%20Reading%20Room/ Policies_and_Manuals/CARRP_Guidance.pdf (April 11, 2008). According to defendants, this policy applies to naturalization applications or adjustment of status applications among other things, and that plaintiffs were not subject to it.[3] Defs.' Mot. at 3.

While plaintiffs allege in their complaint that "on information and belief . . . [d]efendants are internationally delaying a response to the Department of State in regard to [Ghadamy's] visa application pursuant to the CARRP program," Compl. ¶ 28, they have not set forth any factual allegations to support that conclusion. Furthermore, plaintiffs do not contest defendants' assertion that CARRP does not apply to them. Indeed, they do not even address this argument in

---

3       A publicly available document released from USCIS as a result of FOIA requests state that CARRP does not apply to I-130 visa applications. *See* Fraud Detection & National Security Controlled Application Review and Resolution Program (CARRP) Independent Study, U.S. Citizenship and Immigration Services, https://www.aclusocal.org/sites/default/files/wp-content/uploads/2013/01/FDNS-CARRP-Independent-Study-Powerpoint-v.-1.1-Dec.-28-2011.pdf (Dec. 28, 2011) at 28.

their opposition to the motion to dismiss; they simply argue that CARRP is an unlawful policy. Pls.' Opp. at 23–25. If CARRP does not apply to plaintiffs, and they have not been affected by it, then they have no standing to pursue a claim based on it, and plaintiffs appear to concede this point.[4] *E.g.*, *Ali v. D.C. Court Servs.*, 538 F. Supp. 2d 157, 161 (D.D.C. 2008) ("If a plaintiff fails to respond to a motion to dismiss or files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."); *Stephenson v. Cox*, 223 F. Supp. 2d 119, 121 (D.D.C. 2002) ("[W]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded. . . ."). The Court will therefore grant defendants' motion to dismiss with respect to the challenge to CARRP.

This leaves plaintiffs' claim insofar as it alleges an unreasonable delay in adjudicating Ghadamy's waiver of the restrictions set forth in Presidential Proclamation 9645.

The APA requires that agencies, "within a reasonable time . . . shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). If they fail to do so, the APA authorizes courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). At the same time, however, the APA exempts from judicial review "agency action [that] is committed to agency discretion by law." § 701(a)(2).

---

4       To establish constitutional standing, plaintiff must demonstrate: (1) that it has suffered a concrete, particularized, and actual or imminent "injury-in-fact"; (2) that the injury is "fairly traceable" to the challenged action of the defendant; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations omitted). Plaintiffs have not provided the Court with any facts to conclude that the policy applies to them. Thus, they have not suffered an injury-in-fact as a result of the policy, and any finding that the policy is unlawful would not redress plaintiffs' alleged injuries.

The government argues that plaintiffs' claims are unreviewable under the APA because the waiver program is governed entirely by the Proclamation (which is presidential action that is, in defendants' point of view, not subject to the APA) and the process of adjudicating waiver applications is committed to agency discretion. Defs.' Mot. at 9, 11. In the alternative, the government contends that the delay in rendering a decision on the waiver is not unreasonable. *Id.* at 12.

The Court need not decide whether plaintiffs' claims are reviewable under the APA, because it finds that the delay asserted was not unreasonable.[5] *See Bhagerian*, 2020 WL 674778, at *5 (finding that it need not decide whether the claims were reviewable under the APA); *Didban*, 2020 WL 224517, at *5 (assuming without deciding that "the Government's failure to issue a waiver decision is reviewable under the APA"); *Yavari v. Pompeo*, No. 19-CV-0254, 2019 WL 6720995, at *7 (C.D. Cal. Oct. 10, 2019) (assuming without deciding that "the State Department's failure to issue a decision in Plaintiffs' waiver case can properly be considered under" the APA).

To determine whether plaintiffs have sufficiently alleged that agency action has been unreasonably delayed, the Court is required to apply the six factors laid out in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"):

> (1) the time agencies take to make decisions must be governed by a rule of reason;

---

5       Courts may assume reviewability under the APA because the "committed to agency discretion" doctrine does not go to this Court's Article III jurisdiction. *See Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011) ("[A] complaint seeking review of agency action 'committed to agency discretion by law,' 5 U.S.C. § 701(a)(2), has failed to state a claim under the APA, and therefore should be dismissed under Rule 12(b)(6), not under the jurisdictional provision of Rule 12(b)(1).").

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*In re People's Mojahedin Org. of Iran*, 680 F.3d 832, 836–37 (D.C. Cir. 2012), quoting *TRAC*, 750 F.2d at 79 (citations and quotation marks omitted).[6]

The Circuit Court of Appeals has cautioned that the reasonableness of a delay "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but [it] will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). The Court should take into account "the importance of 'competing priorities'" in assessing the reasonableness of an administrative delay." *Id.*, quoting *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (1991). Where "a judicial order putting [the petitioner] at the head of the queue

---

6    Some courts have determined that balancing these factors at the motion to dismiss stage is premature. *See Thomas*, 2020 WL 601788, at *6 (finding that application of the *TRAC* factors is a "fact intensive inquiry" and that any determination would be premature at the motion to dismiss stage); *Moghaddam v. Pompeo*, No. CV 19-668, 2020 WL 364839, at *7 (D.D.C. Jan. 22, 2020) (same). On the other hand, other courts in this district have applied them at the motion to dismiss stage. *Bhagerian*, 2020 WL 674778, at *5; *Didban*, 2020 WL 224517 at *6. In applying these factors, the Court is not determining whether there has been an unreasonable delay; rather, it is determining whether plaintiffs' complaint has alleged facts sufficient to state a plausible claim for unreasonable administrative delay. Thus, it is appropriate for the Court to apply the factors at this stage.

[would] simply move[ ] all others back one space and produce[ ] no net gain" the Court has refused to grant petitioner's relief. *In re Barr Labs.*, 930 F.2d at 75.

The first two of the *TRAC* factors – relating to "the rule of reason" and whether Congress has provided a timetable for agency action – weigh in favor of the government. Plaintiffs have not alleged that there is any statute or regulation that establishes any particular time frame within which an applicant must be considered for a waiver. "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017) (noting that a two-year delay in processing an immigration visa "does not typically require judicial intervention").

Plaintiffs have summarily alleged that the twenty-five month[7] delay is unreasonable, but many courts evaluating similar delays have declined to find a two-year period to be unreasonable as a matter of law. *Bhagerian*, 2020 WL 674778, at *5 (granting defendants' motion to dismiss because the court found that a twenty-five month delay in determining waiver eligibility was not unreasonable); *Didban*, 2020 WL 224517 at *6 (granting defendants' motion to dismiss because plaintiffs failed to state a claim under the APA when they alleged a two-year delay in adjudicating plaintiff's request for a waiver of the travel ban was not unreasonable); *see Yavari*, 2019 WL 6720995, at *8 (granting motion to dismiss because a 14-month delay in determining the application of the waiver was not unreasonable, and observing that "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable"), citing *Siwen Zhang v. Cissna*, No. 18-CV-9696, 2019 WL 3241187, at *5 (C.D. Cal. April 25, 2019) (collecting cases); *L.M. v. Johnson*, 150 F. Supp. 3d 202, 214 (E.D.N.Y. 2015) (granting motion to dismiss and

---

7    Ghadamy was informed that he was being considered for a waiver on March 2, 2018. Dybdahl Decl. ¶ 5.

finding that "[w]hile two years of delay is not insubstantial, the court cannot find, as a matter of law, that plaintiffs have alleged facts that would entitle them to the relief requested").

Defendants maintain that the twenty-five-month period that has elapsed so far is "far from 'extraordinary' when considering the national security interests implicated and the volume of applications being processed," Defs.' Mot. at 12, and they point to statistics showing that the State Department is reviewing approximately 12,000 waiver applications from multiple countries while weighing national security concerns, personal hardship issues, and potential national benefit. Defs.' Mot. at 4, citing Department of State Report: Implementation of Presidential Proclamation 9645, December 8, 2017 to March 31, 2019, https://travel.state.gov/content/dam/visas/presidentialproclamation/Combined%20-%20Report%20on%20Implementation%20of%20PP%209645%20December%2007%202017%20to%20March%2031%202019.pdf (last visited Mar. 19, 2020) at 3. While this is a problem that is entirely of the administration's own creation, and it could easily be alleviated by rolling back the blanket prohibitions contained in the Proclamation, the Court finds that it would be out of step with the weight of decisions from across the country if it drew the line for APA purposes at twenty-five months. Thus, the Court finds that the first and second factors favor defendants.

Plaintiffs have pled facts sufficient to conclude that the third and fifth factors weigh in their favor. These factors relate to plaintiffs' interest, health, and welfare, and plaintiffs state that "[t]he combined delay and failure to act by defendants has irrevocably harmed [p]laintiffs by causing a loss of consortium between them, among other ways." Compl. ¶ 40. It is plainly difficult for Ghadamy to be separated from his children and his wife, and plaintiffs' interest in receiving a decision is undeniably significant.

But, the fourth *TRAC* factor – whether expediting action in this case would harm other agency activities of equal or greater priority – weighs in favor of the government. As stated earlier, at least 12,000 visa applicants are currently undergoing waiver-eligibility review. Defs.' Mot. at 4. And plaintiffs do not dispute that expediting review in Ghadamy's case would merely direct government resources from the adjudication of other waiver applications, putting him "at the head of the queue" and "mov[ing] all others back one space," producing "no net gain." *In re Barr Labs.*, 930 F.2d at 75; *see Skalka*, 246 F. Supp. 3d at 154 (noting that courts step outside of their "limited role" where they require "agencies to invest the high degree of resources that would be necessary to accurately investigate plaintiffs' visa petitions," because such a requirement "would presumably delay other adjudications" and make others "suffer in response"). These sorts of judicial "reordering[s] [of] agency priorities" are inappropriate where "[t]he agency is in a unique – and authoritative – position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr Labs.*, 930 F.2d at 76.

The last *TRAC* factor notes that the Court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed. *TRAC*, 750 F.2d at 79. So the lack of those allegations does not count against the plaintiffs here.

In light of these factors, the Court finds that plaintiffs have failed to state a claim under the APA for an unreasonable delay. The Court recognizes that the delay has imposed severe hardships on plaintiffs, and this decision is not meant to minimize those difficulties. If the government persists in declaring all applicants from certain countries to be ineligible without more, it is incumbent upon the agency to devote the resources and put in place the apparatus needed to evaluate the many claims for waiver expeditiously to ensure that the waiver provision

does not become an empty promise – a gesture to appease the Supreme Court that has no practical effect. While the Court finds itself constrained not to declare two years to be unreasonable as a matter of law, this is a close case. The Court is deeply troubled by the amount of time the waiver process is taking, and it will take a dim view of agency attempts to defend delays that extend much longer, particularly in the absence of any data related to the amount of time it takes to process an individual request and the resources available in the country at issue.

This conclusion also disposes of plaintiffs' request for a writ of mandamus. While plaintiffs have not alleged a separate claim for mandamus, they asked the Court to compel defendants "to promptly complete all administrative processing within sixty days" and to compel defendants "to explain to [p]laintiffs the cause and nature of the delay and inform [p]laintiffs of any action they may take to accelerate processing of the visa application." Compl. at 10–11.

"The standard by which a court reviews . . . agency inaction is the same under both § 706(1) of the APA and the Mandamus Act . . . ." *Bhagerian*, 2020 WL 674778, at *5, quoting *Skalka*, 246 F. Supp. 3d at 152. The court must look to whether "the agency has unreasonably delayed the contemplated action," *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (internal quotation marks omitted), and the Court's ruling on the APA claim applies to Ghadamy's request for mandamus as well. The D.C. Circuit has instructed that courts should "reject[ ] mandamus claims that would have . . . the effect of allowing the plaintiffs to jump the line, functionally solving their delay problem at the expense of other similarly situated applicants." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016). For these reasons, the request for mandamus will be rejected.

## III.   Constitutional Claim

Plaintiffs' second claim for relief alleges that defendants have violated their due process rights under the Fifth Amendment by delaying the decision on Ghadamy's waiver.   Compl. ¶¶ 37–40.

It is true that "[i]n the enforcement of the [immigration] policies, the Executive Branch of the Government must respect the procedural safeguards of due process."   *Galvan v. Press*, 347 U.S. 522, 531 (1954).   To state a due process claim, plaintiffs must plausibly allege, first, that "there exists a liberty or property interest of which plaintiff has been deprived," and second, that the procedures the government provided were constitutionally inadequate.   *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam); *see also Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19, 47 (D.D.C. 2018).

Defendants contend that the complaint lacks the necessary liberty interest.[8]   Defs.' Opp. at 17–18.   Plaintiffs argue that Sara, a U.S. citizen, "'has a protected liberty interested in her [immediate relative status] that gives rise to a right to constitutionally adequate procedures in adjudication' of her visa application."   Pls.' Opp. at 22, purporting to quote *Bustamante v. Mukasey*, 531 F.3d 1059, 1062 (9th Cir. 2008) (alteration in original).   But the sentence lifted from the *Bustamante* opinion states that a U.S. citizen has a has a protected liberty interest in her *marriage*, not her "immediate relative status."   *Bustamante*, 531 F.3d at 1062.   And plaintiffs

---

8      Defendants also argue that plaintiffs have been afforded any due process they were owed, because the visa application was denied and the statutory basis for the denial was supplied.   *See Kerry v. Din*, 135 S.Ct. 2128, 2141 (2015) (Kennedy, J., concurring) (finding that Government satisfies any due process duty owed to visa applicants and their citizen relatives when it cites the statutory basis for a visa application's denial).   But the government's reliance on this case is misplaced.   Plaintiffs do not contend that they were entitled to a more fulsome explanation of the government's decision on the visa application – they claim that they are entitled to a decision on Ghadamy's waiver application.   *See Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States*, 168 F. Supp. 3d at 288.

have not provided the Court with any legal support for the notion that the due process clause protects all familial relationships, including the relationship of an adult child with her parent.

There is case authority for the proposition that parents have a fundamental constitutional liberty interest in the "care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *see Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 31 (1981) (addressing due process requirements in parental termination proceedings); *Smith v. Org. of Foster Families for Equal. & Reform*, 431 U.S. 816, 854–56 (1977) (examining constitutional adequacy of notice, pre-removal conference, and post-removal hearing in administrative action to remove child from custody of foster parents); *Stanley v. Illinois,* 405 U.S. 645, 649 (1972) (due process entitles unwed father to a hearing on his fitness as a parent before removing minor children from his custody).

But Sara is an adult, and plaintiffs do not allege any action aimed directly at affecting the parental relationship. Courts have generally held that there is no constitutionally protected liberty interest where the government's interference is indirect. *See Al-Aulaqi v. Obama*, 727 F. Supp. 2d 1, 26 (D.D.C. 2010), citing *Russ v. Watts*, 414 F.3d 783, 791 (7th Cir. 2005) (finding no "constitutional right to recover for the loss of the companionship of an adult child" where the parent-child relationship was "terminated as an incidental result of state action") and *Valdivieso Ortiz v. Burgos,* 807 F.2d 6, 9 (1st Cir. 1986) (finding that the stepfather of an adult inmate who was allegedly beaten to death by prison guards had no remedy under section 1983 for the "incidental deprivation" of their relationship).

Moreover, the parent-child relationship is usually recognized as a liberty interest in the context of a parent's right to the custody and care of a minor child. *See Ginsberg v. New York*, 390 U.S. 629, 639 (1968) (recognizing parents' right "to direct the rearing of their children [as]

basic in the structure of our society"); *Stanley*, 405 U.S. at 651 ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.") (internal quotation marks omitted). The D.C. Circuit does not recognize a relationship protected under the due process clause where the child is an independent adult. *Butera v. District of Columbia*, 235 F.3d 637, 656 (D.C. Cir. 2001) (dismissing a mother's section 1983 claim that her son's death during his employment with the D.C. Metropolitan Police Department violated her due process right to the companionship of her adult child because "a parent does not have a constitutionally protected liberty interest in the companionship of a child who is past minority and independent"); *see also McCurdy v. Dodd*, 352 F.3d 820, 830 (3d Cir. 2003) (dismissing section 1983 claim against police officers implicated in the fatal shooting of plaintiff's son on the ground that "the fundamental guarantees of the Due Process Clause do not extend to a parent's interest in the companionship of his independent adult child"). *But see Trujillo v. Bd. of Cty. Comm'rs,* 768 F.2d 1186, 1189–90 (10th Cir. 1985) (finding that mother had a constitutionally protected liberty interest in her relationship with her adult son but dismissing claim against government officials allegedly responsible for son's death where there was no allegation of the officials' intent to interfere with the parent-adult child relationship).

Thus, the Court is bound by circuit precedent to find that plaintiffs' claim does not implicate a liberty interest protected by the Fifth Amendment. *Al-Aulaqi*, 727 F. Supp. 2d at 26 (plaintiff had no constitutionally protected interest in maintaining a relationship with his adult child); *see also Singh v. Tillerson*, 271 F. Supp. 3d 64, 70 (D.D.C. 2017) (finding that the limited exception to consular nonreviewability for visa decisions that violate a constitutionally protected liberty interest did not apply because plaintiffs did not have a liberty interest in the parent-child

relationship), citing *Movimiento Democracia, Inc. v. Chertoff*, 417 F. Supp. 2d 1350, 1353 (S.D. Fla. 2006) ("[T]here is no statutory or constitutional right to familial association with a person trying to immigrate to the United States."). Therefore, the Court will dismiss plaintiffs' constitutional claim.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  March 19, 2020